UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERILYN SEDELNIK, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-1308 (CFD) |
| | : | |
| CITY OF BRIDGEPORT, | : | |
|     Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Jerilyn Sedelnik, brought this action alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The defendant, the City of Bridgeport, has filed a motion for summary judgment. For the reasons that follow, the defendant's motion is denied.

**I.    Factual Background**[1]

Beginning in 1996, Jerilyn Sedelnik was employed by the City of Bridgeport's Information Technology Services ("ITS") department as a PC Analyst and then as a Network Communication Supervisor.

In 2004, Michael Feeney, the Chief Administrative Officer for the City of Bridgeport, and George Kyrystschenko, the City's ITS director, concluded that the ITS department needed to be reorganized. As part of the ITS department's reorganization, Feeney solicited the assistance of Edmund Winterbottom, the Director of Labor Relations for the City of Bridgeport. Together, Feeney, Kyrytschenko, and Winterbottom developed a new organizational structure and new job

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties, including depositions. They are undisputed unless otherwise indicated.

descriptions for the ITS department. As part of the reorganizations, three separate divisions of the ITS department were created: "Enterprise," "Project," and "Support."

On August 5, 2005, Winterbottom and Kyrystschenko met with ITS employees, including Sedelnik, to discuss the department's reorganization, which included technical upgrades and a "reverse layoff." As explained to the employees, a "reverse layoff" meant that the current ITS employees had to apply for the newly created positions. Of the newly created positions, there were three management positions that were available to members of Sedelnik's union, the Bridgeport City Supervisors Union ("BCSA"): (1) Enterprise Services Manager; (2) Project Specialist Manager; and (3) Supports Specialist Manager. Both the City and BCSA encouraged the members of the BCSA, including Sedelnik, to apply for these newly created positions.

Sedelnik applied and interviewed for two of the three newly create positions—Project Specialist Manager and Support Services Manager.[2] In addition to Sedelnik, four other ITS employees applied for the Project Specialist Manager position and seven ITS employees applied for the Support Services Manager position. At the time Sedelnik applied and interviewed for the two positions, she was sixty-five years old. The age of the other applicants varied from twenty-six to fifty-nine.

A panel of four people, including Winterbottom and Kyrytschenko, interviewed all of the candidates. Sedelnik interviewed for both positions in February 2006. Following her interview, the panel of interviewers found that Sedelnik met the minimum qualifications in terms of

---

[2] BCSA encouraged Sedelnik to apply to all three of the new management positions, however, she did not apply or interview for the Enterprise Services Manager position. In her deposition, Sedelnik could not provide any reason for why she did not apply for the Enterprise Services position.

education, certifications, experience, and status as a BCSA member; however, the panel noted that Sedelnik had no experience with budget maintenance and little experience as a supervisor.[3] The panel found that while Sedelnik's lack of experience made her unfit for a supervisory position, she met the minimum qualifications and, based on her positive track record in the ITS department, she should not be eliminated completely from the ITS department. Consequently, the panel concluded that Sedelnik would be a good fit as a Project Specialist (as opposed to a Project Specialist Manager).[4]

After all of the candidates were interviewed, it was determined that none of the internal ITS candidates possessed the skills and qualities the panel was looking for to fill the Project Specialist Manager and Support Specialist Manager positions. Accordingly, the City opened up the positions to employees from outside of the ITS department.

Prior to interviewing additional candidates, however, Kyrytschenko resigned in March 2006 and the City hired Adam Heller to replace Kyrytschenko as the ITS Director. The second round of interviews for the open positions was conducted in September 2006. The new interviewing panel consisted of Feeney, Adam Heller, Jodi Paul, and Janet Finch. In addition to the four external candidates and two external candidates who applied for the Support Specialist

---

[3] Sedelnik disputes that she lacked the necessary experience with budget maintenance and supervising. Whether Sedelnik actually had the requisite experience may be a material dispute, but there is no genuine dispute as to the panel's findings. See Def. Ex. O.

[4] While the panel found that Sedelnik was best suited for the Project Specialist position, that position was allocated to members of the Laborers' District Council for the Bridgeport Public Employees Local Union 200 ("LIUNA"), and the City was required to first offer that position to any qualified LIUNA candidates. Therefore, the City allegedly offered the Support Specialist I position to Sedelnik (although that position was also a LIUNA position, the City contends that there were no qualified candidates from LIUNA). Sedelnik disputes that she was ever offered this position.

Manager position and the Project Specialist Manager position, respectively, Sedelnik was also allowed to interview for both positions again.

Following the second round of interviews, around November 2006, the City offered the positions to two external candidates: Paul Simeone (51 years old) for the Project Specialist Manager position and Mark Kovacs (38) for the Support Specialist Manager position. Sedelnik was not offered either position; the interviewers concluded that Sedelnik lacked experience with, among other things, budget maintenance and supervising. Several other ITS employees were also not re-hired as part of the reorganization (Bill Boehm (59) and Stephen Voytek (50)) while other ITS employees were retained (Michael Beitman (50), Susan Beetham-Hajtol (56), Candida McGee (63), Stella Felder (51), and Craig Fenn (50)). However, the City continued to employ Sedelnik in the ITS department in various capacities until May 11, 2007, when she was laid off.

## II. Discussion

### A. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

B.  ADEA

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "Claims under the ADEA are governed by the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194–95 (2d Cir. 2007); see also Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 105–06 (2d Cir. 2010) (holding that while Gross v. FBL Fin. Servs., Inc., 557 U.S. ----, 129 S. Ct. 2343 (2009) "changes the latter part of [the McDonnell Douglas] formulation by eliminating the mixed-motive analysis that circuit

-5-

courts had brought into the ADEA from Title VII cases," the McDonnell Douglas burden-shifting framework still applies to ADEA cases).

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination. D'Cunha, 479 F.3d at 195. To establish a prima facie case, a plaintiff must show "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). If the plaintiff establishes a prima facie case of age discrimination, then there is a presumption of unlawful discrimination and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. If the defendant meets this burden of production, the presumption drops away, and the plaintiff "must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action." See Gross, 129 S. Ct. at 2350–51; see also Gorzynski, 596 F.3d at 106 (noting that under Gross, the plaintiff in an ADEA case must prove beyond a preponderance of the evidence age was the "but-for" cause of the adverse employment action "and not just a contributing or motivating factor").

### *1.* *Prima Facie Case*

There appears to be no dispute that Sedelnik satisfies the first three elements of a prima case of age discrimination: (1) based on her age, Sedelnik belonged to a protected class[5]; (2) Sedelnik met the minimum qualifications for the positions[6]; and (3) Sedelnik was not re-hired/laid off. The City of Bridgeport, however, maintains that there is no evidence that Sedelnik was not re-hired/laid off under circumstances giving rise to an inference of discriminatory intent.

"Discriminatory intent may be derived from a variety of circumstances including employer criticisms of the plaintiff's performance using degrading, age-related terms, invidious comments about others in the employee's protected group [or] the transferring of plaintiff's duties to younger employees . . . ." Barker v. UBS AG, No. 3:09-cv-2084, 2011 WL 283993, at * 6 (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). Here, Sedelnik has produced evidence of several age-related remarks that were made about her in the ITS department. First, Kyrytschenko informed Sedelnik that Feeney allegedly told him that he did not want her to be selected to either of the positions she applied for because she was "not young enough to learn new technology." Next, Thomas Sherwood, the Director of the City's Office of Policy and Management, allegedly threatened to "unfund" either position if Sedelnik was hired for the position. Additionally, Joe Sopko told Sedelnik that when Sherwood and Feeney learned that Sedelnik was going to interview for the newly-created supervisor positions, Sherwood and

---

[5] The class protected by 29 U.S.C. § 623(a)(1) is limited to persons forty years of age or older. See 29 U.S.C. § 631(a). Sedelnik was sixty-five years old when she applied and interviewed for the two positions in 2006.

[6] Although both interviewing panels found that Sedelnik lacked experience with budget maintenance and supervising—qualities the panel was looking for—both panels concluded that she met the minimum qualifications for the positions.

Feeney stated that Sedelnik "can't learn new technology. She's too old. We don't want her. She's not going to get one of those jobs." Finally, Brian Williams, the Deputy Chief Administrator Officer for the City of Bridgeport, witnessed a conversation between Feeney and Sherwood in which they allegedly referred to Sedelnik with a profanity/ageist remark.[7]

In addition to the age-related remarks, the evidence also shows that Sedelnik was replaced by employees "substantially younger" than her. In O'Connor v. Consolidated Coin Caterers Corp., the United States Supreme Court stated that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." 517 U.S. 308, 313 (1996); see Woodman, 411 F.3d at 77–84 (applying O'Connor). Thus, as the U.S. Court of Appeals for the Second Circuit has held, it is the defendant's knowledge of the discrepancy between the plaintiff and her replacement that matters, not the defendant's knowledge of the plaintiff's protected status. See Woodman, 411 F.3d at 77–79. There must be evidence of such knowledge at the prima facie stage. See id. at 80. First, there is no dispute that the external candidates who were hired were substantially younger than Sedelnik—the evidence shows that Simeone was fourteen years younger than Sedelnik and Kovacs was twenty-seven years younger than her. As to the defendant's knowledge, there is evidence that the City had access to the personnel records for all of the internal ITS employees who were interviewed, including Sedelnik, through which knowledge of Sedelnik's age could have been obtained. Furthermore, given the alleged age-related remarks made about Sedelnik, there is evidence that at least some

---

[7] While all of these remarks are hearsay, they appear to be admissible as vicarious admissions of a party opponent. See FRE 801(d)(2).

people within the ITS department were aware of Sedelnik's age.  As to the external candidates that were hired (Simeone and Kovacs), the interview panelists had access to the candidates' resumes and observed the candidates in-person during their interviews.  Thus, Sedelnik has produced sufficient evidence that the City was aware of the significant difference in age between Sedelnik and Simeone and Kovacs, which gives rise to an inference of discrimination.  See Framularo v. Bd. of Educ., 549 F. Supp. 2d 181, 186 (D. Conn. 2008).

"While it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) (internal citations and quotations omitted).  Here, the alleged remarks made about Sedelnik's age, coupled with the hiring of employees substantially younger than her, is sufficient evidence to give rise to an inference of discrimination.  Accordingly, the Court finds that Sedelnik has set forth a prima facie case of age discrimination.

### 2. *Legitimate, Non-Discriminatory Reason*

Because Sedelnik has met her burden and set forth a prima facie case of age discrimination, the City of Bridgeport has the burden to articulate a legitimate, non-discriminatory reason for not hiring Sedelnik.  Here, the City has met that burden.

First, the City of Bridgeport initiated a significant reorganization of the ITS department and there is no evidence that the purpose of such reorganization was age-related.  Furthermore, the City's hiring process for the newly created ITS positions was highly transparent.  There is evidence in the record of the interviewing panels' notes and conclusions regarding the various

candidates who interviewed for the supervisory position, including Sedelnik. None of this evidence contains any mention of Sedelnik's age; rather, the panel's observations and conclusions with respect to Sedelnik focus solely on her experience and qualifications (or lack thereof). Despite that Sedelnik had significant experience in the City's ITS department and met the minimum qualifications required for the positions she was applying to, the evidence shows that the hiring committee believed that she lacked the necessary experience and background to take on a supervisory role. Instead, the City opted to hire candidates who the City believed had more relevant experience for the supervisory positions. While Sedelnik disputes the panel's evaluation of her and claims that she had the requisite supervisory experience, it is not the Court's role to question the business judgment of an employer. Cf. Skiff v. Colchester Bd. of Educ., 514 F. Supp. 2d 284, 298 (D. Conn. 2007) ("[T]he Court should not second-guess the defendant's business decisions, however unwise, so long as not made for discriminatory reason." (citing Dister v. Continental Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988)). Accordingly, the City has met its burden in providing a legitimate, non-discriminatory reason for not hiring Sedelnik.

### 3. Pretext & "But For" Causation

Given the City of Bridgeport's articulation of a legitimate, non-discriminatory reason for not hiring Sedelnik, the remaining question is whether Sedelnik has produced sufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that her age was a "but for" cause of the City's decision not to hire her. See Gross, 129 S. Ct. at 2350–51; Gorzynski, 596 F.3d at 107.

The evidence of the age-related remarks that Feeney and Sherwood allegedly made about Sedelnik is sufficient to raise a genuine dispute of material fact as to whether Sedelnik's age was the "but for" cause of the City's decision not to hire Sedelnik. In determining the appropriate weight to give alleged "stray" remarks, "the court must consider all the evidence in its proper context." Weichman v. Chubb & Son, 552 F. Supp. 2d 271, 284 (D. Conn. 2008) (citing Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007)).

Here, both Feeney and Sherwood held significant positions of power and influence within the City of Bridgeport. First, Feeney was the Chief Administrative Officer for the City of Bridgeport, as well as one of the principal persons behind the decision to reorganize the ITS department. Feeney also sat on the second interview panel. Similarly, Sherwood was the Director of the City's Office of Policy and Management. Although the City claims that Sherwood did not have the authority to "unfund" any position that Sedelnik was hired for and therefore his alleged remark should not be given much weight, such a factual dispute regarding Sherwood's influence is not for the Court to decide.

Additionally, even though the City's hiring decisions were made by a panel of interviewers, and not Feeney or Sherwood themselves, there is evidence that both persons' remarks about Sedelnik were overheard by others within the ITS department, including Kyrytschenko who sat on the first interview panel.[8]

Finally, the U.S. Court of Appeals for the Second Circuit has stated that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the

---

[8] Although Kyrytschenko stated in his deposition that Feeney's remarks were "crass" but not age-related, there remains a genuine dispute of material fact as to the substance of Feeney's remarks and the influence those remarks may have had in the hiring process.

allegedly discriminatory behavior, the more probative that remark will be." Tomassi, 478 F.3d at 115. In this case, both Feeney and Sherwood's alleged remarks are evidence of a discriminatory state of mind toward Sedelnik and, given that Sedelnik had been with the ITS department for many years and generally had performed well in her various capacities, the City's decision not to hire her in favor of substantially younger employees makes those alleged remarks more probative.

Consequently, a reasonable jury could conclude that Sedelnik's age was the "but-for" cause of the City's decision not to re-hire her and the City's motion for summary judgment is denied.

### III. Conclusion

Accordingly, the defendant's motion for summary judgment [Dkt. #23] is DENIED.

SO ORDERED this 8th day of August 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**